# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1504
_____

| | |
|---|---|
| United States of America, | |
| Appellee, | |
| v. | Appeal from the United States District Court for the Eastern District of Arkansas. |
| Sangeeta Mann, also known as Sue Mann, | |
| Appellant. | |

_____

Submitted: January 11, 2012
Filed: July 17, 2012
_____

Before WOLLMAN, LOKEN, and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Sangeeta Mann ("Mann") appeals her convictions for conspiring to obstruct an official proceeding and aiding and abetting evidence tampering. For the reasons set out below, we affirm.

## I.     BACKGROUND

Mann's charges stem from a federal grand jury investigation into a well-publicized bombing attack in West Memphis, Arkansas, that targeted the then-chairman of the Arkansas State Medical Board.  Shortly after the bombing, Mann's husband ("Dr. Mann"), a physician whose license to dispense controlled substances had been revoked previously by the Board, was interviewed by agents with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").  Less than a month later, after a chance discovery by a municipal worker of a large cache of unregistered hand grenades buried near Dr. Mann's house, ATF agents executed a search warrant at Dr. Mann's house, found a number of unregistered firearms, and arrested Dr. Mann.  After his arrest, in recorded phone calls from jail, Dr. Mann discussed with Mann the ongoing investigation and his expectation that federal agents would soon conduct additional searches.  Dr. Mann instructed Mann to remove certain items from his medical office before it was searched, and she promptly complied.

A Second Superceding Indictment charged Dr. Mann with a number of counts related to the bombing and with the knowing possession of unregistered high explosive grenades and unregistered firearms.  It charged both Mann and Dr. Mann with conspiring to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), (k), and with aiding and abetting evidence tampering, in violation of 18 U.S.C. §§ 1512(c)(1), 2.  Mann was also charged with making a false material declaration while under oath, in violation of 18 U.S.C. § 1623.  Mann filed an initial motion to sever before the Second Superceding Indictment was filed and a supplemental motion after it was filed.  In both, she argued that joinder of her charges with those of her husband was inappropriate under Federal Rule of Criminal Procedure 8 and that severance of her charges from those of her husband was warranted under Federal Rule of Criminal Procedure 14(a) because joinder would

result in "extreme prejudice" to her. The district court[1] denied each of Mann's motions, as well as a subsequent motion to sever filed by Dr. Mann and adopted by Mann.

The district court seated a jury after the distribution of jury questionnaires and an almost week-long *voir dire* process. The trial of Mann and Dr. Mann lasted over three weeks. On the third day of its deliberations, the jury returned guilty verdicts against Mann on both of the § 1512 charges and a not-guilty verdict on her § 1623 charge. It returned guilty verdicts against Dr. Mann on all of the charges relating to the bombing, on both of the § 1512 charges, and on all but one of his charges relating to possession of illegal firearms and explosives.

After trial, Mann filed a motion for a judgment of acquittal or for a new trial, which the district court denied. At her sentencing hearing, the district court calculated Mann's advisory sentencing guidelines range as 46 to 57 months' imprisonment, but then varied downward and sentenced Mann to 12 months' imprisonment. Mann appeals her convictions on various grounds.

## II. DISCUSSION

Mann makes four arguments on appeal. First, she renews her joinder and severance arguments. Second, she argues that she was denied her Sixth Amendment right to an impartial jury. Third, she contends that an *ex parte* communication that occurred between the trial judge and jury necessitates an evidentiary hearing to determine its propriety. Fourth, she challenges the denial of her motion for a judgment of acquittal on the grounds of evidentiary insufficiency.

---

[1] The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

### A. Joinder and Severance

Mann argues that the district court erred in joining her case with Dr. Mann's and then abused its discretion in denying her motion to sever. She contends that the joint trial was prejudicial to her because it included the presentation of evidence related to the "numerous bad acts of [her] husband and co-defendant." "[T]he severity and complexity of [Dr. Mann's] charged offenses, the media coverage, and the emotional nature of the charges and evidence" created, in her view, a "high risk of undue prejudice."

Joinder is a question of law, and we therefore review claims of misjoinder *de novo*. *United States v. Liveoak*, 377 F.3d 859, 864 (8th Cir. 2004). "[A]n error involving misjoinder . . . requires reversal only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Lane*, 474 U.S. 438, 449 (1986) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

We review a district court's denial of a motion to sever made pursuant to Federal Rule of Criminal Procedure 14 for abuse of discretion, *Liveoak*, 377 F.3d at 864, reversing only when the district court's denial "resulted in severe or compelling prejudice," *United States v. Rimell*, 21 F.3d 281, 289 (8th Cir. 1994). "Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal, a chance that [the defendant] would have had in a severed trial." *United States v. Garrett*, 648 F.3d 618, 625-26 (8th Cir. 2011) (quoting *United States v. Koskela*, 86 F.3d 122, 126 (8th Cir. 1996)). The burden of establishing prejudice falls on the defendant. *Id.* at 626. "Severance is not required merely because evidence that is admissible only against some defendants may be damaging to others." *United States v. Mickelson*, 378 F.3d 810, 818 (8th Cir. 2004).

Even if Mann could show either misjoinder or an abuse of discretion in failing to sever, Mann's claims on each of these legal grounds fails because she cannot demonstrate the prejudice necessary for reversal under either claim. "When there are few defendants and the trial court is aware of the potential for prejudice, 'the risk of transference of guilt over the border of admissibility [may be] reduced to the minimum' by carefully crafted limiting instructions with a strict charge to consider the guilt or innocence of each defendant independently." *Lane*, 474 U.S. at 450 n.13 (alteration in original) (quoting *Blumenthal v. United States*, 332 U.S. 539, 560 (1947)).

Mann has not challenged on appeal the adequacy of the district court's well-constructed and lengthy jury instructions. The jury was instructed to:

> give separate consideration to the evidence about each individual defendant. Each defendant is entitled to be treated separately, and you must return a separate verdict for each defendant. Also keep in mind that you must consider, separately, each crime charged against each individual defendant, and must return a separate verdict for each of those crimes charged.

"The risk of prejudice posed by joint trials is best cured by careful and thorough jury instructions." *Mickelson*, 378 F.3d at 818; *see also United States v. Avila Vargas*, 570 F.3d 1004, 1009 (8th Cir. 2009). In addition, Dr. Mann's bombing and firearms charges were sufficiently distinct from Mann's obstruction and evidence-tampering charges that we see no reason to question the ability of the jury to compartmentalize the evidence presented on each charge against each defendant. *See United States v. Lewis*, 557 F.3d 601, 610-11 (8th Cir. 2009). Indeed, powerful proof of the efficacy of the district court's instructions and of the jury's ability to compartmentalize the evidence is the fact that Mann and Dr. Mann each were acquitted on one count. *See United States v. Pherigo*, 327 F.3d 690, 693 (8th Cir. 2003) ("In our consideration of the jury's ability to compartmentalize the evidence against the joint defendants, we consider . . . if one or more of the defendants were acquitted."); *United States v.*

*Wadena*, 152 F.3d 831, 849 (8th Cir. 1998) (holding a jury's acquittal of defendants on certain counts to be evidence of the jury's ability to compartmentalize evidence).

In light of the district court's careful instruction of the jury and the jury's apparent ability to consider each defendant and each count individually, Mann has not demonstrated prejudice resulting either from the joining of her case with Dr. Mann's or from the district court's denial of her motion to sever. In the absence of such prejudice, we will not reverse on this basis.

### B. Jury Impartiality

"[T]he criminally accused [have a right to] a fair trial by a panel of impartial, indifferent jurors." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (internal quotation marks omitted). "Voir dire serves the purpose of assuring a criminal defendant that this right will be protected." *United States v. Ortiz*, 315 F.3d 873, 888 (8th Cir. 2002). "Trial judges have broad discretion in determining how best to conduct voir dire, though this discretion is not without boundaries." *Id.* "Because the trial judge is in the best position to analyze the demeanor and credibility of a venireman, we will not reverse a court's rulings absent an abuse of discretion." *Id.*

Mann asserts that she was denied her right to an impartial jury. She points to the jury questionnaires collected at the outset of the *voir dire* process, which she contends "show that racial prejudice, religious and cultural prejudice, and media saturation and bias had compromised the jury pool, and made it impossible to select an impartial jury." She also points to comments made at *voir dire* by jurors who were eventually seated, which she argues show similar disqualifying prejudice.

Because Mann raises this issue for the first time on appeal, we review for plain error only. *See United States v. Ali*, 616 F.3d 745, 751-52 (8th Cir. 2010). For us to find plain error, Mann would have "to show that (1) there was an error that was not

affirmatively waived, (2) the error was 'plain,' meaning clear and obvious, (3) the error affects [her] substantial rights, and (4) the error 'seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id*. at 752 (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)). She fails to meet this stringent burden.

As an initial matter, the jury Mann alleges was irretrievably compromised by bias acquitted her on a perjury charge and her husband on one of his firearms charges. In *Skilling*, the Supreme Court found a jury's acquittal of a defendant on some counts to be a factor of "prime significance" in assessing potential jury bias, stating that "[i]t would be odd for an appellate court to presume prejudice in a case in which jurors' actions run counter to that presumption." *Skilling v. United States*, 561 U.S. ---, 130 S. Ct. 2896, 2916 (2010); *see also United States v. Arzola-Amaya*, 867 F.2d 1504, 1514 (5th Cir. 1989) ("The jury's ability to discern a failure of proof of guilt of some of the alleged crimes indicates a fair minded consideration of the issues."). We therefore consider Mann's claims in light of the significant fact of her acquittal on the § 1623 charge.

Jury selection stretched across four days in this case. Ninety-two potential jurors completed questionnaires that asked for information as to racial, ethnic, or religious bias, as to preconceptions and beliefs about guns and gun policy, and as to media exposure. The district court excused twenty-four for cause on the basis of their questionnaire answers. Fifty-seven of the remaining potential jurors were subjected to a searching, extensive, and individualized *voir dire* process, during which a further seventeen were excused for cause. Ultimately, thirty-eight were qualified as jurors by the district court. After both parties exercised their peremptory strikes, twelve jurors and three alternates were seated without objection.

Mann identifies no irregularities in this process other than marginal answers given by jurors either on their questionnaires or during *voir dire*. All of these problematic answers were scrutinized by both parties and the district court and in all

instances were found to be unproblematic. For example, Mann points to one seated juror's statement that she "would probably tend to trust a U.S. citizen more" than a foreigner, but the juror in question was in fact seated without objection after she went on to affirm that she would not "treat [the Manns] any differently than [she] would" native-born Americans and that she believed that "Dr. Mann and his wife are . . . entitled to a fair and impartial jury." Mann points to a second seated juror who stated in his questionnaire that he was in favor of government regulation of the types and number of firearms one can own. He went on to affirm during *voir dire*, though, that he would not "convict someone just because they had guns" and that he was "okay" with the fact that, "[u]nder the law, it is possible to own a machine gun legally if you do certain things." This juror, too, was seated without objection. In all of the instances that Mann identifies of a seated juror purportedly stating something objectionable during *voir dire*, the juror, under further questioning, alleviated any concern raised to the satisfaction of the district court and the parties.

Mann essentially asks us to interfere with the district court's credibility determinations, an uncomfortable prospect in itself, and she has provided us no valid factual or legal reason to do so. *See United States v. Rodriguez*, 581 F.3d 775, 788 (8th Cir. 2009) ("[I]f the district court accepts assurance that [the jurors] will set aside any preconceived beliefs, the court's ruling is a credibility finding."); *see also Skilling,* 130 S. Ct. at 2918 ("Reviewing courts are properly resistant to second-guessing the trial judge's estimation of a juror's impartiality, for that judge's appraisal is ordinarily influenced by a host of factors impossible to capture fully in the record—among them, the prospective juror's inflection, sincerity, demeanor, candor, body language, and apprehension of duty."); *Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991) ("A trial court's findings of juror impartiality may 'be overturned only for manifest error.'" (quoting *Patton v. Yount*, 467 U.S. 1025, 1031 (1984))). We decline the invitation.

Appellate Case: 11-1504     Page: 8     Date Filed: 07/17/2012 Entry ID: 3932435

### C. *Ex Parte* Communication

"[T]he right to personal presence at all critical stages of the trial" is a fundamental right of criminal defendants. *Rushen v. Spain*, 464 U.S. 114, 117 (1983). *Ex parte* communications between judge and jury "are improper and presumptively prejudicial." *United States v. Koskela*, 86 F.3d 122, 125 (8th Cir. 1996). However, "a clear indication of an absence of prejudice" can overcome this presumption, *id.*, and the presumption does not apply to contacts between judge and jury that are merely "ministerial" in nature and not "substantive" communications, *see Shelton v. Purkett*, 563 F.3d 404, 408 (8th Cir. 2009).

Mann contends that an *ex parte* communication between the judge and jury may have affected the jury's verdict and, relying on *Rushen*, requests a remand for an evidentiary hearing into the nature of the communication. She bases this contention on the district court's statement to the jury in open court, immediately before the recital of final jury instructions:

> [A]s I told you back in the jury room about 15 minutes ago, we've been working since we saw you yesterday on all of our jury instructions, and we went from whatever time we got out yesterday afternoon to 8:30 last night. We started back up at 10:00 o'clock this morning. We were able to come up with 32 initial instructions, which I'm about to give you.

In *Rushen*, though, the Supreme Court noted that a remand for an evidentiary hearing is required only in instances when a trial judge fails to disclose an *ex parte* communication to counsel for all parties. *Rushen*, 464 U.S. at 119 ("When an *ex parte* communication relates to some aspect of the trial, the trial judge generally should disclose the communication to counsel for all parties. The prejudicial effect of a failure to do so, however, can normally be determined by a post-trial hearing."). Here, the district court informed the parties and their counsel in open court of the

-9-

contents of his *ex parte* communication shortly after it occurred, and *Rushen* therefore does not require us to order an evidentiary hearing.

Moreover, "it has been recognized that 'a court's ex parte communication with the jury will not require a reversal where substantive rights of parties have not been adversely affected.'" *Powell v. Kroger Co.*, 644 F.2d 1245, 1247 (8th Cir. 1981) (per curiam) (quoting *Petrycki v. Youngstown & N. R.R.*, 531 F.2d 1363, 1367 (6th Cir. 1976)). Because, in this case, it is clear that the court's communication with the jury was ministerial and not substantive and that neither party was denied the opportunity to object or make a record, we conclude that the *ex parte* contact in question did not affect Mann's substantive rights because it was not prejudicial to her. *See id.* Because the *ex parte* communication was disclosed to the parties and because we find here "a clear indication of an absence of prejudice," *Koskela*, 86 F.3d at 125, we see no need for a remand for an evidentiary hearing.

### D. Judgment of Acquittal

"We consider challenges to the sufficiency of the evidence to support a conviction *de novo* but consider the evidence presented 'in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict.'" *United States v. Diaz-Pellegaud*, 666 F.3d 492, 498 (8th Cir. 2012) (quoting *United States v. Yarrington*, 634 F.3d 440, 449 (8th Cir. 2011)), *petition for cert. filed* (U.S. June 1, 2012) (No. 11-10972), *petition for cert. filed* (U.S. June 14, 2012) (No. 11-10908). "Reversal for evidentiary insufficiency is only warranted when, based on the evidence before it, 'no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" *Id.* (quoting *United States v. Espinosa*, 585 F.3d 418, 423 (8th Cir. 2009)).

### 1. *Conspiracy to Obstruct an Official Proceeding*

Mann was convicted of conspiracy to obstruct justice within the meaning of 18 U.S.C. § 1512(c)(2) by, *inter alia*, corruptly removing certain items at Dr. Mann's direction from his office in anticipation of a search and having friends dispose of items for her while the investigation was ongoing. Section 1512(c)(2) criminalizes corruptly "obstruct[ing], influenc[ing], or imped[ing] any official proceeding, or attempt[ing] to do so." Conspiring to commit any substantive offense in § 1512 is proscribed by 18 U.S.C. § 1512(k). "[O]fficial proceeding" for the purposes of § 1512(c)(2) is defined as including "a proceeding before a judge or court of the United States . . . or a Federal grand jury." 18 U.S.C. § 1515(a)(1)(A). Mann contends that there was insufficient evidence presented at trial to sustain her conviction.

At trial, the Government presented recordings of phone calls made between Mann and Dr. Mann after his arrest while the federal grand jury investigation into the bombing was still ongoing. During some of these calls, recorded prior to the execution of a search warrant at Dr. Mann's medical office, Mann and Dr. Mann talked about firearms and "Dan's papers" that were located at Dr. Mann's office and the fact that Dr. Mann's attorney had told him that a search of the office was imminent. The name "Dan" apparently referred to the Manns' son Kundan Mann. Steven Briscoe, a man imprisoned with Dr. Mann, testified at trial that Dr. Mann told him that Dan had been involved in the bombing. In a later phone call, recorded the day after ATF agents searched the office and found no firearms or papers belonging to Dan, Mann told her husband about the search and, after he asked her whether she had removed anything from the office before the search, she responded, "We did good. We did good."

Phillip and Rita Barthelme testified that, shortly after Dr. Mann's arrest and before the execution of search warrants at the Mann house and office, Mann had

-11-

asked them to haul away from her house and dispose of a carload and a small truckload of items, most of which the Barthelmes later burned. Although Phillip described the load of items as just "stuff that [Mann] didn't want anymore," including furniture, clothing, and books, and Rita described it as "basically just junk," ATF agents who later inspected the Barthelmes' burn pile found the scorched remains of a three-ring bank binder with the name "Sunny Mann" on it, a nickname of Sandip Mann, Mann's brother-in-law. Sandip Mann was a person of interest in the investigation because of his complicated financial relationship with Mann and Dr. Mann and because of an email sent to him by Dr. Mann that included a picture of and specifically identified the Arkansas State Medical Board chairman targeted in the bombing.

This evidence, construed in the light most favorable to the Government and buttressed with "all reasonable inferences" that could have been made based on it, *see Diaz-Pellegaud*, 666 F.3d at 498, could have reasonably led the jury to find that Mann and Dr. Mann corruptly conspired to impede the investigation into Dr. Mann by, *inter alia*, removing potentially relevant evidence, including materials relating to Dan and Sandip Mann, from Dr. Mann's office in anticipation of a warrant search. The evidence presented at trial was therefore sufficient to sustain Mann's conviction on this count.

### 2. Aiding and Abetting Tampering with Evidence

Mann also was convicted of aiding and abetting tampering with evidence in violation of 18 U.S.C. § 1512(c)(1) by removing from Dr. Mann's medical office a special power of attorney, a general power of attorney, pre-signed blank checks, and other financial documents related to Sandip Mann, her brother-in-law, before a search warrant was executed there. Section 1512(c)(1) prohibits, *inter alia*, corruptly "conceal[ing] a record, document, or other object, or attempt[ing] to do so, with the intent to impair the object's integrity or availability for use in an official proceeding."

An "official proceeding" includes a proceeding before a federal judge, court, or grand jury, 18 U.S.C. § 1515(a)(1)(A), and "an official proceeding need not be pending or about to be instituted at the time of the offense," 18 U.S.C. § 1512(f)(1). Mann contends first that there was no "official proceeding" within the meaning of the statute because there was no official proceeding focusing on Sandip Mann specifically. She also argues that there is insufficient evidence that her actions were related to any official proceeding or that she corruptly concealed the documents in question.

Mann's first argument is flawed. Section 1512(f)(1) specifically provides that no "official proceeding need . . . be pending or about to be instituted at the time of the offense." Thus, § 1512(c)(1) requires only that Mann have acted with the intent to impair the documents' availability to an official proceeding. It does not require the Government to prove the existence of an official proceeding focusing on Sandip Mann. Furthermore, notwithstanding Mann's protestations to the contrary, the Government never argued that there was an official proceeding to investigate Sandip Mann specifically but rather argued that he was a person of interest in the ongoing federal grand jury investigation into the bombing, which clearly was an official proceeding within the meaning of the statute. *See* 18 U.S.C. § 1512(c)(1); 18 U.S.C. § 1515(a)(1)(A).

Mann's second argument also fails. She contends that the Government failed to meet its burden of showing an intent to impair an official proceeding because it had not shown a sufficient nexus between a proceeding and her conduct. She relies primarily on the Supreme Court's decision in *United States v. Aguilar*, 515 U.S. 593 (1995), in which the Court construed a jury tampering statute as requiring the charged conduct to "have a relationship in time, causation, or logic with the judicial proceedings." *Id.* at 599. Under *Aguilar*, "the endeavor must have the 'natural and probable effect' of interfering with the due administration of justice." *Id.* (quoting *United States v. Wood*, 6 F.3d 692, 695 (10th Cir. 1993)). While we are aware of no

-13-

court that has applied the *Aguilar* nexus requirement to § 1512(c)(1), some courts have applied *Aguilar* to § 1512(c)(2). *See, e.g.*, *United States v. Reich*, 479 F.3d 179, 186 (2d Cir. 2007). It is not necessary for us to decide whether *Aguilar* applies to § 1512(c)(1), however, because, even if we were to assess the evidence presented against her in light of *Aguilar*, Mann's argument would still fail.

Several days before the execution of the search of Dr. Mann's office, and after Dr. Mann was told by his lawyer that a search of the office was imminent, Dr. Mann told Mann to remove certain items from the office and to give them to either Gerald Riley or another man. Mann retrieved the documents related to Sandip Mann from the office and gave them to Riley with instructions to hold onto them for her. She collected them from Riley about a day later. On a subsequent visit to Riley's home, Mann offered to hire an attorney for Riley and told him that he did not have to cooperate with prosecutors or with the ATF. Riley told Mann that he already had been contacted by the ATF and that they knew about the envelope he had held for her, in response to which Mann said, "They don't know everything." In subsequent testimony before the grand jury, Mann was confronted about the Sandip Mann documents, ultimately admitted that she removed the documents from the office prior to the search, and eventually turned them over pursuant to a subpoena.

The jury could have reasonably inferred from this sequence of events that, by removing documents related to Sandip from the office shortly before the search and by then giving them to a trusted friend of the family to hold, Mann corruptly intended to impair the availability of these documents to the ongoing grand jury investigation and that her actions had "a relationship in time, causation, or logic with the judicial proceedings" such that their "'natural and probable effect' [was] interfer[ing] with the due administration of justice." *Aguilar*, 515 U.S. at 599 (quoting *Wood*, 6 F.3d at 695). Therefore, the evidence was sufficient to support Mann's conviction on this count.

## III.  CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 17, 2012

Ms. Linda S. Sheffield
Suite 200
1201 Peachtree Street
400 Colony Square
Atlanta, GA  30361

     RE:  11-1504  United States v. Sangeeta Mann

Dear Counsel:

     The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00a.m. today. Please hold the opinion in confidence until that time.

     Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

                             Michael E. Gans
                             Clerk of Court

YML

Enclosure(s)

cc:    Mr. Danny Ray Crabtree Jr.
        Mr. Timothy Oliver Dudley
        Mr. Michael S. Gordon
        Ms. Stacey E. McCord
        Mr. Jim McCormack
        Mr. Jeffrey M. Rosenzweig
        Ms. Karen Whatley

     District Court/Agency Case Number(s):   4:09-cr-00099-BSM-2

# United States Court of Appeals
*For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Michael E. Gans**
*Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

July 17, 2012

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

RE: 11-1504  United States v. Sangeeta Mann

Dear Sirs:

A published opinion was filed today in the above case.

Counsel who presented argument on behalf of the appellant was Linda S. Sheffield, of Atlanta, GA.

Counsel who presented argument on behalf of the appellee was Michael S. Gordon, AUSA, of Little Rock, AR. The following attorney(s) appeared on the appellee brief; Karen Whatley, AUSA, of Little Rock, AR.

The judge who heard the case in the district court was Honorable Brian S. Miller. The judgment of the district court was entered on March 2, 2011.

If you have any questions concerning this case, please call this office.

Michael E. Gans
Clerk of Court

YML

Enclosure(s)

cc:  Lois Law
     MO Lawyers Weekly

District Court/Agency Case Number(s):  4:09-cr-00099-BSM-2



**11-1504 United States v. Sangeeta Mann "Signed Opinion Filed" (4:09-cr-00099-BSM-2)**

8cc-cmecf-nda   to:                                                07/17/2012 09:07 AM

***NOTE TO PUBLIC ACCESS USERS*** Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing.

### Eighth Circuit Court of Appeals

**Notice of Docket Activity**

The following transaction was filed on 07/17/2012
 **Case Name:**    United States v. Sangeeta Mann
 **Case Number:**  11-1504
 **Document(s):**  Document(s)

**Docket Text:**
OPINION FILED - THE COURT: ROGER L. WOLLMAN, JAMES B. LOKEN and RAYMOND W. GRUENDER. Raymond W. Gruender, Authoring Judge (PUBLISHED) [3932435] [11-1504] (Yvette Lisenby)

**Notice will be electronically mailed to:**

Mr. Danny Ray Crabtree, Jr.: danny.crabtree@sbcglobal.net, danny.crabtree@sbcglobal.net
Mr. Timothy Oliver Dudley: todudley@swbell.net
Mr. Michael S. Gordon, Assistant U.S. Attorney: michael.gordon@usdoj.gov, Valerie.Andrews@usdoj.gov
Mr. Jim McCormack, Clerk of Court: ared_appeals@ared.uscourts.gov
Mr. Jeffrey M. Rosenzweig: jrosenzweig@att.net, jeffrosenzweig@sbcglobal.net, leejoshr@gmail.com, smwbraden@gmail.com
Ms. Linda S. Sheffield: linda@sheffieldlawfirm.com
Ms. Karen Whatley, Assistant U.S. Attorney: karen.whatley@usdoj.gov, Colleen.Dubose@usdoj.gov
Lois Law: FED08@loislaw.com
MO Lawyers Weekly: stephanie.maniscalco@molawyersmedia.com
West Publishing: us08@westdcs.west.thomson.com

Ms. Stacey E. McCord, Assistant U.S. Attorney: Stacey.McCord@usdoj.gov, gina.tomasiewicz@usdoj.gov (*daily summary* )

The following document(s) are associated with this transaction:
**Document Description:** Opinion Filed
**Original Filename:** 111504P.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=07/17/2012] [FileNumber=3932435-0]
[597c5186c224263e35aaefeb492cb22446337d8b30b284297e58474614ecc3f109f824d63eb1d56
9eb3c8ff38fb7e465bc70041fa460607a5d507306390876de]]

**Document Description:** Counsel Opinion Letter
**Original Filename:**
/opt/ACECF/live/forms/ylisenby_111504_3932435_CounselOpinionLetters_285.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=07/17/2012] [FileNumber=3932435-1]
[65c4bd4ac7118322daf9c035beecd2e7f9bb4ffe732ab6771967673b0270806c880433357375a4c8
bb575312b956e6ca83d50d9270b86588aa83c7bd1c09722f]]
**Recipients:**
- Mr. Danny Ray Crabtree, Jr.
- Mr. Timothy Oliver Dudley
- Mr. Michael S. Gordon, Assistant U.S. Attorney
- Ms. Stacey E. McCord, Assistant U.S. Attorney
- Mr. Jim McCormack, Clerk of Court
- Mr. Jeffrey M. Rosenzweig
- Ms. Linda S. Sheffield
- Ms. Karen Whatley, Assistant U.S. Attorney

**Document Description:** Letter To Publishing
**Original Filename:**
/opt/ACECF/live/forms/ylisenby_111504_3932435_LettersToPublishing_284.pdf
**Electronic Document Stamp:**
[STAMP acecfStamp_ID=1105112566 [Date=07/17/2012] [FileNumber=3932435-2]
[b5385ffe0e3af1e5e8f2ba239c4a5547843f27206b9dab36d990c604c22ae6728f77673a55c2a2316
d559ade7bff5aeaa1d65a3405b114e5ae58d242f3105fa9]]
**Recipients:**
- Lois Law
- MO Lawyers Weekly
- West Publishing

The following information is for the use of court personnel:

**DOCKET ENTRY ID:** 3932435
**RELIEF(S) DOCKETED:**
  for publication
**DOCKET PART(S) ADDED:** 4655507, 4655508, 4655509